IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ruby Knight Incorporated, *et al.*, | No. CV-16-02059-PHX-JJT |
| Plaintiffs, | **ORDER** |
| v. | |
| Dark Stage Lighting Services Incorporated, *et al.*, | |
| Defendants. | |

At issue is Plaintiffs Ruby Knight, Inc. and Leigh Kay Rogers's Motion to Modify Scheduling Order and for Leave to Amend Complaint (Doc. 42, Mot.), to which Defendants Dark Stage Lighting Services, Inc., Limelight Staging Productions, Jeffrey Madison Holmes, and Tancy Holmes filed a Response (Doc. 50, Resp.), and Plaintiffs filed a Reply (Doc. 53, Reply). The Court finds these matters appropriate for decision without oral argument. *See* LRCiv 7.2(f).

**I.     BACKGROUND**

Plaintiffs filed their Complaint on May 26, 2016. (Doc. 1, Ex. 1.) Defendants removed the action to this Court on June 24, 2016. (Doc. 1.) On July 8, 2016, Defendants filed their Answer. (Doc. 7.) The parties filed their Joint Proposed Case Management Plan on August 16, 2016 (Doc. 11), which the Court accepted (Docs. 14-15), setting the deadline for Plaintiffs to amend their Complaint as September 16, 2016 and the close of discovery as May 19, 2017. The present Motion followed.

In the time between removal and the present Motion, Plaintiffs contend that they sought to verify the existence of a Partnership Agreement signed by the parties in 2005. In doing so, Plaintiffs allege that they located the notary who verified the parties' signatures on the Agreement, which "took some time." (Mot. at 3.) Plaintiffs do not assert when counsel became aware of the Agreement, when they determined the identity of the notary, or what led to either discovery. (Mot. at 3.) Plaintiffs' first attempt at contacting the notary was December 8, 2016. After communicating with the notary, Plaintiffs requested formal verifications regarding the Agreement on January 5, 2017. The notary supplied photocopies of the requested pages on January 12, 2017. Plaintiffs disclosed the information to Defendants on February 17 and 24, 2017. The following month, Plaintiffs met with the notary, obtained clearer copies of the produced pages, and obtained a declaration of custodian records. In response, Defendants subpoenaed the notary, before meeting with her on March 13, 2017. Plaintiffs then sought amendment.

## II. LEGAL STANDARD

A party may amend a pleading once as a matter of course within 21 days after serving it, or within 21 days of service of, among others, a Rule 12(b)(6) motion. Fed. R. Civ. P. 15(a). In all other circumstances, absent the opposing party's written consent, a party must seek leave to amend from the court. Fed. R. Civ. P. 15(a)(2). Although the decision to grant or deny a motion to amend is within the trial court's discretion, "Rule 15(a) declares that leave to amend shall be freely given when justice so requires." *Foman v. Davis,* 371 U.S. 178, 182 (1962) (citation and internal quotation marks omitted). "In exercising its discretion with regard to the amendment of pleadings, a court must be guided by the underlying purpose of Rule 15—to facilitate a decision on the merits rather than on the pleadings or technicalities." *Eldridge v. Block,* 832 F.2d 1132, 1135 (9th Cir. 1987) (citation and internal quotation marks omitted).

However, the policy in favor of allowing amendments is subject to limitations. *Madeja v. Olympic Packers,* 310 F.3d 628, 636 (9th Cir. 2002) (holding that after a defendant files a responsive pleading, leave to amend is not appropriate if the

"amendment would cause prejudice to the opposing party, is sought in bad faith, is futile, or creates undue delay."). Where a court has entered a scheduling order under Rule 16 and set a deadline for amending the pleadings, the Court "should address the issue under [Rule] 16." *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1294 (9th Cir. 2000). Under Rule 16, a party must show "good cause for not having amended their complaint before the time specified in the scheduling order expired." *Id.* "This standard 'primarily considers the diligence of the party seeking the amendment.'" *Id.* (citing *Johnson*, 975 at 607).

## III. ANALYSIS

Plaintiffs seek to modify the Scheduling Order pursuant to Federal Rule of Civil Procedure 16(b), allowing them to amend their complaint to add counts for breach of contract and breach of the implied covenant of good faith and fair dealing. (Mot. at 1.) In doing so, Plaintiffs assert one "good cause" reason: that they sought to resolve all issues and potential challenges to the Agreement corroborating their proposed claims—the authenticity of which Defendants contest—prior to presenting it to the Court. (Mot. at 5-6.) Defendant responds that Plaintiffs have failed to show diligence or that they were in any way precluded from meeting the Scheduling Order's deadline, and that Plaintiffs could have brought the claims prior to authenticating the purported Agreement. (Resp. at 4-7.)

As stated, district courts primarily consider diligence of the party seeking amendment. *See Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992). While the existence and degree of prejudice to the party opposing modification may also be considered, if the party was not diligent "the inquiry should end." *Johnson*, 975 F.2d at 609. For the reasons that follow, the Court finds that Plaintiffs were not diligent in their efforts to comply with the Scheduling Order or in seeking amendment of it.

Plaintiffs allege that the Agreement giving rise to their proposed additional claims was executed by the parties on December 20, 2005. (Mot. at 2.) Thus, regardless of any

question of authenticity, Plaintiffs—by virtue of signing and acting in accordance with the Agreement—had knowledge of the purported contract more than 10 years prior bringing this action. Nowhere do Plaintiffs contend that the Agreement is newly discovered evidence, or that they were unaware of its existence at any point since its execution. Moreover, Defendants allegedly breached the Agreement on May 14, 2014 (Mot. at 3), providing Plaintiffs over two years to investigate the existence and authenticity of any agreements upon which they now wish to rely. After filing, Plaintiffs had an additional four months to further investigate their claims before the Scheduling Order's deadline—which Plaintiffs proposed. Yet no investigation into the Agreement is alleged to have occurred until December 8, 2016. (Mot. at 3.) Plaintiffs provide no reason for the delay preceding their first attempt to contact the notary. Instead, Plaintiffs contend that they did not assert their proposed claims because they wanted to conduct discovery to verify and establish the authenticity of the Agreement.[1] (Mot. at 3.) But Plaintiffs do not allege that any discovery led to their attempt to locate the notary, or that they were precluded from contacting the notary prior to the Court's deadline or the filing of their Complaint. Under any standard, this is not diligence.

Plaintiffs' reasoning is further undermined by the fact that the document's authenticity did not preclude them from asserting the claims in the operative pleading. First, Plaintiffs are the master of the Complaint and are free to determine what claims are brought and under what law. *The Fair v. Kohler Die & Specialty Co.*, 228 U.S. 22, 25 (1913). Plaintiffs, who executed the Agreement and apparently had possession of it since its signing, had firsthand knowledge as to both the existence and authenticity of the document both after its purported breach and the filing of this action. Second, even assuming that Plaintiffs doubted the authenticity of their own document—for reasons which neither party has elaborated on—it would not preclude Plaintiffs from asserting the

---

[1] While Plaintiffs note that they issued discovery requests on June 7, 2016 and again, post-removal, on October 10, 2016, they do not assert that discovery yielded facts that furthered their investigation or presented information not known to them at the time of filing or before. Nor do they explain the nearly two month delay in issuing their post-removal discovery.

same claims based on an oral agreement. *See, e.g.*, *Arnold & Assocs., Inc. v. Misys Healthcare Sys., a div. of Misys, PLC*, 275 F. Supp. 2d 1013, 1020 (D. Ariz. 2003). Indeed, Plaintiffs assert that the parties had "operated as a partnership for nearly a decade prior to the dispute," which is purportedly evidenced by bank accounts, distributions, contracts, and Defendants' own emails. (Reply at 2-3.) If true, Plaintiffs were free to assert the proposed claims when they filed their Complaint, relying either on information and belief, or the conduct and written documents they now allege illustrate the partnership. As Defendants note, Plaintiffs could have relied on many of the same factual allegations supportive of their current claims in support of its breach of contract and breach of the covenant of good faith and fair dealing claims. (Resp. at 6-7.)

Because Plaintiffs have failed to show good cause under Rule 16, the Court need not consider whether the proposed amendment is proper under Rule 15. *See Graber v. Zaidi*, No. 3:09-CV-00475-RAM, 2010 WL 3238918, at *3 (D. Nev. Aug. 12, 2010). Nonetheless, amendment under Rule 15 is equally unwarranted, given the late stage of proceedings and that "late amendments to assert new theories are not reviewed favorably when the facts and the theory have been known to the party seeking amendment since the inception of the cause of action." *Acri v. Int'l Ass'n of Machinists & Aerospace Workers*, 781 F.2d 1393, 1398 (9th Cir. 1986). With the discovery deadline approaching, any attempt at extending that date, as well as any for continued motion practice, would prejudice Defendants and unduly delay resolution of this case. *Id.* at 1398-99; *see also In re Circuit Breaker Litig.*, 175 F.R.D. 547, 551 (C.D. Cal. 1997) (noting that the longer the delay to amend, the less a showing of prejudice is needed for denial) (citing *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993)).

## IV. CONCLUSION

The Court finds that Plaintiffs' lack of diligence—not only early in litigation but in investigating the claim post-alleged-breach and pre-filing—coupled with their uncontroverted knowledge regarding the facts they claim give rise to their proposed claims, do not provide good cause to amend the Scheduling Order. *See Johnson*, 975 F.2d

at 606-11 (holding where the plaintiff moved to join a defendant four months after the deadline to join parties, the plaintiff "failed to demonstrate good cause for his belated motion to amend" because the joined defendant's answer to the complaint and responses to interrogatories put him on notice that he had not joined the correct party). While Plaintiffs detail their investigation into the Agreement's authenticity, they fail to at all account for the delay in initiating that investigation, or to provide any reason whatsoever for their lack of confidence in the document's legitimacy—other than Defendants' assertions.[2] Plaintiffs had knowledge of the majority—if not all—of the facts they claim support their Motion by the time of the alleged breach, the original filing, and the Scheduling Order's deadline. *See B2B CFO Partners, LLC v. Kaufman*, No. CV 09-2158-PHX-JAT, 2011 WL 2713887, at *4 (D. Ariz. July 13, 2011) (denying a similar motion, finding "Plaintiffs had a seemingly complete picture of what they now allege" and "yet they limited their [claims]").

**IT IS THEREFORE ORDERED** denying Plaintiffs Ruby Knight, Inc. and Leigh Kay Rogers's Motion to Modify Scheduling Order and for Leave to Amend Complaint (Doc. 42).

Dated this 26th day of April, 2017.

Honorable John J. Tuchi
United States District Judge

---

[2] Indeed, Plaintiffs admit that they believed "sufficient evidence existed to permit the amendment and addition of the claims based on the Agreement" but "Defendants challenged the authenticity of the Agreement." (Mot. at 6.) Defendants' challenge does not preclude Plaintiffs from attempting to amend. If all issues disputed by the opposing party foreclosed their pleading, very few claims could ever be brought.