# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ruby Knight Incorporated, *et al.*, | No. CV-16-02059-PHX-JJT |
| Plaintiffs, | **ORDER** |
| v. | |
| Dark Stage Lighting Services Incorporated, *et al.*, | |
| Defendants. | |

At issue is Plaintiff Ruby Knight, Inc. ("Ruby Knight") and Leigh Kay Rogers's Motion for Partial Summary Judgment (Doc. 75, Pls' MPSJ), to which Defendants Dark Stage Lighting Services, Inc. ("Dark Stage"), Limelight Staging Productions ("Limelight"), Jeffrey Madison Holmes, and Tancy Holmes filed a Response (Doc. 88, Defs' Resp.), and to which Plaintiffs filed a Reply (Doc. 96, Pls' Reply). Also at issue is Defendants' Motion for Partial Summary Judgment on Counts VIII and IX (Doc. 83, Defs' MPSJ), to which Plaintiffs filed a Response (Doc. 90, Pls' Resp.), and to which Defendants' filed a Reply (Doc. 97, Defs' Reply). The Court finds the Motions appropriate for resolution without oral argument. *See* LRCiv 7.2(f). The Court grants Defendants' Motion for Summary Judgment as to Count VIII of Plaintiffs' Complaint. The Court further declines to exercise supplemental jurisdiction over Plaintiffs' remaining state claims in light of the dismissal of Plaintiffs' single federal claim. Therefore, the Court denies the balance of Defendants' Motion and Plaintiffs' Motion and remands the matter to Maricopa County Superior Court for further proceedings.

## I. BACKGROUND

The dispute at hand involves a business relationship gone sour. On one side is Leigh Rogers and Ruby Knight—an Arizona corporation solely owned by Rogers. On the other are Holmes and Dark Stage, which like Ruby Knight, is an Arizona corporation that Holmes wholly owns and operates. Holmes and Rogers first met in the early 2000s while Rogers was working as the Director of Audio Visual at the Princess Resort in Scottsdale, Arizona. After collaborating on a few occasions, the pair discussed entering into a business relationship to produce corporate meetings and special events across the country. These discussions were reduced to an agreement in 2005 wherein Dark Stage and Ruby Knight agreed to collaborate to produce corporate events for an array of clients. From July 2005 through May 2014, the two put on 82 corporate events across the nation for clients, including Hershey, Paul Hastings, and Littler Mendelson. In the course of business, Rogers was provided with a business email address associated with Limelight Staging Productions.[1]

On May 27, 2014, Rogers began experiencing issues with her Limelight email account. As she had done in the past when technical difficulties arose, Rogers reached out to Holmes to ask for help. Later that day, Holmes arrived at Rogers's home to fix the problem. After Rogers provided Holmes with access to her computer, Holmes inserted a flash drive to allegedly install anti-virus software on Rogers's computer. Rogers, however, did not observe what precisely Holmes was doing on her computer.

Three days later, the business relationship between Rogers and Holmes came to a swift end and Holmes changed the password to Rogers's Limelight email account. In August 2014, Rogers noticed that she was no longer receiving emails from her attorney in the inbox of her personal email account. After contacting Cox, which hosted the account, Rogers discovered filters implemented within the settings of her Cox email client. Those

---

[1] At the heart of the parties' dispute is a controversy over what, precisely, Limelight is. Plaintiffs argue that Limelight is the name of a distinct partnership between Dark Stage and Ruby Knight whereas Defendants argue that Limelight is a trade name of Dark Stage.

1  filters blocked the receipt of emails from Hersheys, Littler, and Paul Hastings domain
2  addresses. In October 2015, Rogers discovered additional filters and rules both in
3  Microsoft Outlook and the Cox email client that were designed to automatically forward
4  emails both to Rogers's former Limelight account and to a Limelight administrative
5  account. During that period, Holmes accessed those Limelight accounts and viewed
6  emails that had been forwarded from Rogers's personal account.

On May 26, 2016, Plaintiffs filed suit in Maricopa County Superior Court alleging state law claims for breach of fiduciary duty, promissory estoppel, unjust enrichment, conversion, accounting, constructive trust. (Doc. 1-1, Compl. ¶¶ 40–71, 82–87.) The Complaint additionally sought a declaration under Arizona law that Ruby Knight was the legal and equitable partner of Limelight, entitling Plaintiffs to 50% of Limelight's profits. (Compl. ¶¶ 72–75.) Finally, Plaintiffs included a claim against Holmes for violating the Wiretap Act, 18 U.S.C. § 2510 *et seq.* (Compl. ¶¶ 76–81.) Defendants timely removed to federal court on the basis of the single federal claim. (Doc. 1, Notice of Removal ¶ 6.).

## II. LEGAL STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate when: (1) the movant shows that there is no genuine dispute as to any material fact; and (2) after viewing the evidence most favorably to the non-moving party, the movant is entitled to prevail as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Eisenberg v. Ins. Co. of N. Am.*, 815 F.2d 1285, 1288-89 (9th Cir. 1987). Under this standard, "[o]nly disputes over facts that might affect the outcome of the suit under governing [substantive] law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "genuine issue" of material fact arises only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In considering a motion for summary judgment, the court must regard as true the non-moving party's evidence, if it is supported by affidavits or other evidentiary material. *Celotex*, 477 U.S. at 324; *Eisenberg*, 815 F.2d at 1289. However, the non-moving party

may not merely rest on its pleadings; it must produce some significant probative evidence tending to contradict the moving party's allegations, thereby creating a material question of fact. *Anderson*, 477 U.S. at 256–57 (holding that the plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment); *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968).

"A summary judgment motion cannot be defeated by relying solely on conclusory allegations unsupported by factual data." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). "Summary judgment must be entered 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *United States v. Carter*, 906 F.2d 1375, 1376 (9th Cir. 1990) (quoting *Celotex*, 477 U.S. at 322).

### III. ANALYSIS

Defendants move for summary judgment on Rogers's claim for violations of the Wiretap Act (Count VIII) and Rogers's state law claim for Invasion of Privacy (Count IX). Plaintiffs in turn move for summary judgment on their claim for a declaratory judgment that Ruby Knight is the legal and equitable partner of Limelight, entitling Plaintiffs to 50% of Limelight's profits. The Court first addresses Defendants Motion.

**A. Count VIII: Violation of the Wiretap Act, 18 U.S.C. § 2511**

Plaintiffs allege that, between May 27, 2014, and October 2015, Holmes intentionally intercepted Plaintiffs' electronic communications by establishing "rules" that forwarded emails from Rogers's personal email account to Limelight accounts that only Holmes could access. (Compl. ¶¶ 34–39, 78.) Defendants present two arguments in support of their Motion for Summary Judgment on this claim. First, Defendants argue that Plaintiffs fail to make a sufficient showing that Holmes set up the rules in Plaintiffs' email account. (Defs' MPSJ at 4–5.) Second, Defendants argue that, even assuming Holmes set up the forwarding rules, Plaintiffs' evidence fails to demonstrate that an interception of Rogers's email occurred "before arrival." (Defs' MPSJ at 6.) Thus,

Defendants argue that the receipt of Plaintiffs' emails was not an "interception" under the act. (Defs' MPSJ at 6.)

The Wiretap Act prohibits the "intentional[] intercept[ion] . . . [of] any wire, oral, or electronic communication." 18 U.S.C. § 2511(1)(a). Though the Act contains provisions imposing criminal liability, it also provides a private right of action to those whose electronic communications are intercepted. 18 U.S.C. § 2520; *see also Noel v. Hall*, 568 F.3d 743, 744 (9th Cir. 2009). The Ninth Circuit, however, construes the term "intercept" narrowly. *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir. 2002). Thus, "the Act applies only to 'acquisition contemporaneous with transmission.'" *Theofel v. Farey-Jones*, 359 F.3d 1066, 1077 (9th Cir. 2004) (quoting *Konop*, 302 F.3d at 878.).

Although not addressed in the briefs, the Court assumes for the purpose of summary judgment both that Rogers's emails qualify as electronic communications under the Act and that Holmes received emails on Limelight email accounts that were originally directed to Rogers's personal account. Thus, the only dispute at this stage is (1) whether the forwarding of Rogers's emails was an "interception" as defined by the Act and (2) whether any interception was intentional.

Turning to the first point, Defendants argue that Plaintiffs' supporting evidence—which consists of four screenshots of Rogers's email settings both in Microsoft Outlook and in a Cox.net web-based email client[2] and Rogers testimony as to the existence of those settings—is insufficient as a matter of law to prove that an interception occurred. (Defs' MPSJ at 5–7; *see* Doc. 91-1, Plaintiffs' Controverting Statement of Facts "Pls' CSOF" Ex. 1 at 2, 5, 7–8.) Those screenshots indicate that, within Rogers's Outlook settings, three rules were set up to forward emails to an administrative account associated with Limelight. The rules applied "after [a] message arrived" either (1) from an individual email account with "paulhastings" in the sender's domain address; or (2) from

---

[2] Although the screenshots display settings from two different email clients, Rogers appears to have been accessing the same email account regardless of the email client—a personal account hosted by Cox. (*See* Pls' CSOF Ex. 1 at 3, 7).

- 5 -

an individual with an email account with "hersheys" or "littler" in the sender's domain address; or (3) from any sender when "littler" or "hersheys" was in a recipient's domain address. (Pls' CSOF Ex. 1 at 2, 5, 7–8.) Rogers's Cox.net web-based email client contained additional filters that forwarded all emails directed toward Rogers's Cox email account to her Limelight email account. (Pls' CSOF Ex. 1 at 3.)

Plaintiffs do not submit any additional evidence to support this aspect of the Wiretap Act claim, but rather argue that the screenshots and Rogers's testimony about the filters are sufficient to survive summary judgment. (*See* Pls' Resp. at 8–13.) Plaintiffs point to a case from the Seventh Circuit, *United States v. Szymuszkiewicz*, 622 F.3d 701 (7th Cir. 2010), in support of this argument. In *Syzmuszkiewicz*, the appellant, a former IRS revenue officer, challenged his criminal conviction under the Wiretap Act for the interception of emails sent to his supervision. *Id.* at 703. At trial, the prosecution put on its case by presenting evidence that the appellant used Microsoft Outlook's rule function to forward emails sent his supervisor's account to his own account. *Id.* The appellant challenged the sufficiency of the evidence on appeal, arguing in part that "the rule . . . directed the email system to forward her emails to him only 'after the message arrive[d].'" *Id.* Thus, appellant argued that no "interception" occurred under the Act. *Id.*

The Seventh Circuit rejected this argument and affirmed the appellant's conviction. *Id.* at 704. However, in doing so the court noted that "[t]he evidence permitted the jury to find . . . that every message to [the supervisor] went through the IRS's regional server in Kansas City, and that the server retained the message in its own files and dispatched two copies: one for [the supervisor] and another for Szymuszkiewicz." *Id.* The court additionally found that, because either a server or the recipient's computer created copies of the emails "within a second of each message's arrival and assembly," the non-approved receipt of those emails was a "contemporaneous" interception. *Id.* at 706.

The Ninth Circuit has not yet opined on the applicability of the Wiretap Act to email forwarding rules and filters; however, district courts in the Circuit, relying on

- 6 -

*Konop*, have rejected Wiretap Act claims predicated on the automatic forwarding of email. *See Exec. Sec. Mgmt., Inc. v Dahl*, 830 F. Supp. 2d 883, 904–05 (C.D. Cal. 2011); *Bunnel v. Motion Picture Ass'n of Am.*, 567 F. Supp. 2d 1148, 1152–54 (C.D. Cal. 2007). This Court need not reach the question of whether an automatic forwarding rule could ever form the basis of a Wiretap Act claim because, in this case, Plaintiffs present no evidence from which a finder of fact could find that an "interception" of Rogers's emails occurred before those same emails arrived in her inbox.

Screenshots alone are insufficient to survive summary judgment. Although a screenshot demonstrates that auto-forwarding rules and filters were in place for Rogers's email, it provides no evidence as to the functionality of those rules. Unlike *Szymuszkiewicz*, Plaintiffs present no evidence of how the rules in Outlook and the Cox filters affected the routing of Rogers's emails at the server. *See* 622 F.3d at 704. Nor do Plaintiffs submit any evidence showing how quickly emails were forwarded after delivery to Rogers. *See id.* Thus, Plaintiffs' argument that the Outlook rules caused Rogers's emails to be forwarded to Holmes "within, at most, an eye blink of Ms. Rogers receiving them," (Pls' Resp. at 12–13) is nothing more than *ipse dixit* because no evidence in the record supports it.[3] Plaintiffs cannot merely rely on the fact that Microsoft Outlook was the same email client used to forward emails in *Szymuszkiewicz* because the Court has no facts about Outlook's functionality to consider *in this case*. *See Taylor*, 880 F.2d at 1045. Based on the screenshots of the rules presented as evidence on summary judgment, the Court cannot come to any conclusion other than a finding that the rules forwarded emails "after arrival." That finding is insufficient to establish liability under the Wiretap Act. *See Konop*, 302 F.3d at 878.

---

[3] Moreover, the Ninth Circuit's opinion in *Konop* makes clear that the fact that email transmissions travel "at the speed of light" is irrelevant for determining whether or not an interception has occurred. *See Konop*, 302 F.3d at 878 n.6. In this regard, the Seventh Circuit's assertion in *Szymuszkiewicz* that a "computer ma[king] copies of [emails] . . . within a second of each message's arrival and assembly" is a contemporaneous interception, 622 F.3d at 706, is in conflict with the *Konop* Court's conclusion that "interception" occurs "before arrival," 302 F.3d at 878 (quoting *Webster's Ninth New Collegiate Dictionary* 630 (1985)).

Further, Plaintiff's reliance on *Szymuszkiewicz* is questionable in this case because many of the email forwarding filters were set up in Rogers's Cox.net email client rather than in Microsoft Outlook. (*See* Pls' CSOF Ex. 1 at 3–6.) Yet still, Plaintiffs submit no facts that give any insight into the technical processes for message filters in the Cox email client. Thus, no evidence in the record supports a finding that Holmes intercepted Rogers's emails "during transmission" rather than after the emails arrived in Rogers's inbox. *See Konop*, 302 F.3d at 878. Accordingly, the Court grants Defendants' Motion for Summary Judgment on Plaintiffs' Wiretap Act claim (Count VIII).

## IV. CONCLUSION

Plaintiffs originally filed this case in Maricopa County Superior Court and Defendants removed to this Court on the basis of the federal question embedded within Plaintiffs' Wiretap Act claim. (Notice of Removal ¶ 6.) Because the Court dismisses Plaintiffs' federal claim, the Court no longer retains federal question jurisdiction because all remaining claims in the case are state law claims. Thus, the only basis for federal jurisdiction in this case is supplemental jurisdiction. The Ninth Circuit has "often repeated that 'in the usual case in which all federal-law claims are eliminated before trial, the balance of the factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims.'" *Acri v. Varian Assocs, Inc.*, 114 F.3d 999, 1001 (9th Cir. 1997) (en banc) (quoting *Canegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)). The Court thus declines to exercise supplement jurisdiction over the remaining state law claims in this case.

**IT IS THEREFORE ORDERED** granting in part and denying in part Defendants' Motion for Partial Summary Judgment (Doc. 83).

**IT IS FURTHER ORDERED** denying Plaintiffs' Motion for Summary Judgment (Doc. 75) as moot because the Court declines to exercise supplemental jurisdiction over the remaining state law claims.

. . . .

. . . .

**IT IS FURTHER ORDERED** directing the Clerk of Court to remand this action back to the Maricopa County Superior Court.

Dated this 19th day of March, 2018.

Honorable John J. Tuchi
United States District Judge